UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BILL HATRAF and TEAMWEAR LIMITED LIABILITY COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:25-CV-1757-ZMB |
| CHARITY WRIGHT, et al, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motions to Dismiss. Docs. 13, 26. Because Plaintiff Teamwear Limited Liability Company fails to state a claim under either the Computer Fraud and Abuse Act (CFAA) or the Defend Trade Secrets Act (DTSA), the Court dismisses these federal claims, declines to exercise supplemental jurisdiction over the remaining state-law claims, and remands this case to state court.

## BACKGROUND

### I. Relevant Facts

Plaintiff Bill Hatraf is the owner and president of Teamwear—a company that designs custom clothing and supplies for businesses. Doc. 3 ¶¶ 1–2. Defendant Charity Wright was a full-time employee at Teamwear between 2022 and 2024. ¶¶ 5, 9. During her tenure, Wright was a "trusted employee" with access to Teamwear's internal information, including customer records, leads on potential customers, and reports and other information about the company. *Id.* ¶¶ 6, 10. Teamwear asserts that this information was "confidential," stored on a computer, and "protected by a logon procedure." *Id.* ¶¶ 7–8, 10.

In 2024, Wright resigned to join Defendant Advertising Premium Sales (APS)—a Teamwear competitor owned by Defendant Matt Shucart. *Id.* ¶¶ 3–4, 9, 12. After her departure, Teamwear discovered that Wright both stole and "deleted customer information from [its] computer without permission." *Id.* ¶ 11. Wright and Shucart used that information to contact Teamwear's customers. *Id.* ¶¶ 13–14, 18. Teamwear suffered various harms as a result, including the loss of its "confidential customer information," revenue, profits, and customers, as well as incurring costs associated with "investigating and prosecuting the legal claims in this case." *Id.* ¶ 26.

## II. Procedural History

Hatraf and Teamwear initially brought this case in state court, alleging federal claims under the CFAA and DTSA, as well as a host of state-law claims. *See* Doc. 3 ¶¶ 20–77. APS and Shucart removed the action to this Court with Wright's consent, *see* Doc. 1, and timely moved to dismiss the case, Doc. 13. As relevant here, they argue that the CFAA claim fails because the Petition falls short of the heightened pleading standard under Federal Rule of Civil Procedure 9(b) and fails to plead threshold damages. *Id.* ¶ 1. Moreover, they contend that Teamwear failed to allege a protected trade secret as required for a viable DTSA claim. *Id.* ¶ 2. Plaintiffs opposed the motion, and the APS Defendants replied. Doc. 20–21.

Although her attorney was admitted pro hac vice in January, Doc. 17, Wright failed to respond to the Petition. As such, Hatraf moved for partial summary judgment and—before seeking the Clerk of Court's entry of default—also requested partial default judgment. Docs. 22–23. Shortly thereafter, Wright filed her motion to dismiss,[1] which Plaintiffs opposed, and she also filed an answer and opposition briefs to Hatraf's motions for summary and default judgment. Docs. 26, 28–31. No replies were filed, meaning all motions are ripe for adjudication.

[1] While the motion appears to be untimely, Plaintiffs waived this issue by failing to move to strike or assert the defect. Moreover, "an untimely 12(b)(6) motion can be construed as a motion under Rule 12(c) for judgment on the pleadings," *see United States v. Maassen*, 2018 WL 4518989, at *2 (N.D. Iowa Aug. 29, 2018) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)), which is appropriate here given that APS Defendants prevail on equivalent arguments.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." The purpose of such motions "is to test the legal sufficiency of the complaint." *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief" and providing notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)). Additionally, the complaint must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the plaintiff must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

Teamwear has failed to state a claim under either CFAA or DTSA. The Court will discuss each in turn, before addressing its decision to decline supplemental jurisdiction over the remaining state-law claims and remand the case to the St. Louis County Circuit Court.

### I. CFAA Claim

Defendants offer three reasons why Teamwear's CFAA claim fails. First, APS and Shucart contend that Teamwear has not met the heightened pleading standard for fraud under Rule 9(b). Doc. 14 at 4–6. Second, Wright notes that Teamwear fails to allege that she was not authorized to access the information she allegedly disseminated. Doc. 27 at 2–3. Finally, all Defendants argue that Plaintiffs failed to plead the minimum damages threshold of $5,000 within a single year, as required by the CFAA. Doc. 14 at 6–7; Doc. 27 at 3.

Teamwear responds by arguing that Rule 9(b) does not apply but, regardless, that it did meet that threshold. Doc. 20 at 5 (citing Doc. 3 ¶¶ 6, 21–26). Further, Teamwear asserts that Wright engaged in "unauthorized access, copying, and deleting" of information in that "Wright was never authorized to delete anything from Teamwear's computer." Doc. 29 at 4–5. Finally, while Teamwear acknowledges that it did "not explicitly state [its] allowable damages exceed $5000," it asserts that the Petition sufficiently pled damages. *Id.* at 7.

The CFAA permits civil recovery from anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." 18 U.S.C. § 1030(a)(4), (g). Any damage resulting from the unauthorized access must result in damages of "more than $5,000 in any 1-year period." *See id.* § 1030(a)(4). As used in the statute, "'without authorization' protects computers themselves from 'outside hackers,' while 'exceeds authorized access' provides complementary protection for certain information within computers by targeting 'so-called inside hackers.'" *AssuredPartners v. Bauer*, No. 4:24-CV-1170-CDP, 2024 WL

5056348, at *2 (E.D. Mo. Dec. 10, 2024) (citation omitted). To "exceed authorization" under the CFAA, the defendant must "accesses a computer with authorization but then obtain[] information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren v. United States*, 593 U.S. 374, 396 (2021).

Even assuming that the Rule 8 pleading standard applies,[2] Teamwear fails to establish that Wright exceeded the authorization it acknowledges giving her. *See* Doc. 3 ¶ 6. Although she might have acted with ill-intent in accessing the information when she did, having "'improper motives' for obtaining information that is otherwise available to [her]" does not constitute a CFAA violation. *See Pinebrook Holdings v. Narup*, No. 4:19-CV-1562-MTS, 2022 WL 1773057, at *12 (E.D. Mo. June 1, 2022). Likewise, Teamwear's argument that "Wright was never authorized to delete anything from Teamwear's computer" falls short for similar reasons. *See* Doc. 29 at 4. The only allegation that Wright exceeded her authorization is the statement that she did so "without permission." Doc. 3 ¶ 11, but that is both conclusory and irrelevant. Whether Wright deleted the information without permission does not matter so long as she could access it in the first place. *See Foley Indus. v. Nelson*, 2021 WL 5614775, at *5 (W.D. Mo. Nov. 30, 2021) ("The CFAA, however, treats accessing and altering information identically by its plain terms[, meaning] . . . altering and deleting the emails is also immaterial without allegations that Defendant altered or deleted emails from a part of the system that was off limits to her." (quotation omitted)). In sum, because Wright had the ability to access the information Teamwear asserts she misused, its CFAA claim fails.

[2] While Defendants cite a number of cases indicating that Rule 9(b) applies to CFAA claims, *see* Doc. 14 at 4 (collecting cases), there appears to be a split in authority on this point, *see NetApp v. Nimble Storage*, 41 F. Supp. 3d 816, 833 (N.D. Cal. 2014) (collecting contrary authority). In some instances, such as when the CFAA claim involves "fraudulent inducement," the heightened pleading standard clearly applies. *See NetApp*, 41 F. Supp. 3d at 833–34. That appears to be the case here because the Petition alleges that Wright "fraudulently" accessed the relevant information. *See* Doc. 3 ¶¶ 21–25. And if Rule 9(b) does apply, Teamwear fails to "state with particularity the circumstances constituting fraud," because it does not "plead the who, what, when, where, and how of alleged fraudulent actions." *See USC Enters., LLC v. Shah*, 2016 WL 4148276, at *2 (E.D. Ark. 2016).

Moreover, Teamwear admits that it did not "explicitly state [that its] allowable damages exceed $5000," but suggests it "may do so through a minor amendment which is requested herein." Doc. 20 at 7. Although it gestures at the damages suffered as a result of Wright's actions, the Petition does not give any basis to infer that the damages exceeded the $5,000 threshold within a year. As such, Teamwear's admitted failure to allege threshold damages defeats its CFAA claim.

On a final note, while Teamwear alternatively asks for leave to amend, Doc. 20 at 1, that request is insufficient as it fails to "indicated how it would make the complaint viable," *See Pet Quarters v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009); *see also King v. United Parcel Serv.*, 152 F.4th 915, 923 (8th Cir. 2025) ("The general rule is that a district court can deny 'leave to amend' when a plaintiff does not submit a motion [or] offer a proposed amended complaint." (quotation and alterations omitted). Indeed, Teamwear affirmatively recognizes that Wright had access to the area of the computer system that is the basis of its claim. As such, the Court dismisses Count 1 with prejudice.

**II. DTSA Claim**

Defendants also argue that Teamwear failed to establish the elements of its DTSA claim. Notably, they fault Teamwear for not properly alleging any trade secrets protected under the DTSA. Doc. 14 at 7–8; Doc. 27 at 3. In response, Teamwear argues that it is required only "to give notice to the defendant of the trade secret claim" and that Wright had access to a host of information they kept secret, including "confidential customer information." *See* Doc. 20 at 8–9 (citing Doc. 14 ¶¶ 6, 11). Defendants have the better argument.

To establish DTSA claim, a plaintiff must allege "(1) the existence of protectable trade secrets, (2) misappropriation of the trade secrets by the defendant, and (3) damages or entitlement to injunctive relief." *Williams v. Insomnia Cookies*, No. 4:23-CV-669-HEA, 2025 WL 2062189,

at *5 (E.D. Mo. July 23, 2025) (citation omitted). "The DTSA . . . define[s] a 'trade secret' as 'information' that '(1) is not generally known or readily ascertainable, (2) has value as a result of its secrecy, and (3) is the subject of reasonable efforts under the circumstances to protect its secrecy." *Prarie Field Servs. v. Welsh*, 497 F. Supp. 3d 381, 395 (D. Minn. 2020); *see also Ahern Rentals v. EquipmentShare.com*, 59 F.4th 948, 955 (8th Cir. 2023) (analyzing these elements). While plaintiffs need not "allege the nature of their trade secrets with a great deal of specificity at the pleading stage," they "must describe their trade secrets with more than conclusory statements, and with sufficient information to infer more than a mere possibility of misconduct." *CH Bus Sales v. Geiger*, 2019 WL 1282110, at *8 (D. Minn. Mar. 20, 2019) (citations omitted).

Even if appropriating mere "customer information" could be sufficient to establish a DTSA claim, Teamwear fails to establish that the information was a trade secret. First, the Petition does not explain how Teamwear's "customer information and records" go beyond information that is readily known or generally available to competitors. Second, although Teamwear claims that it protected its customer information by requiring an individualized password to access its computer system, *see* Doc. 3 ¶¶ 7–8, that measure alone is insufficient to protect the information's secrecy. While password protection "can signal appropriate protective efforts" for a DTSA claim, system-wide passwords are insufficient to make an individual piece of information a protectable trade secret. *Prairie Field Servs. v. Welsh*, 497 F. Supp. 3d 381, 396–97 (D. Minn. 2020) ("If a basic computer-login password were enough, then every document stored on a company device would potentially be protectable."). Finally, although Teamwear suggests the pilfered information was valuable, *see* Doc. 8 ¶¶ 26, 33, it has not shown that the value derives from the information's secrecy, *see Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 666 (E.D. Tex. 2024) (finding customer lists, among other information, was not a trade secret under the DTSA because the plaintiff failed to show that the lists' secrecy generated value independent of other factors).

As such, because Teamwear fails to establish a cognizable trade secret, its DTSA claim also must be dismissed. Unlike the CFAA claim, however, it is at least possible that Teamwear could correct these deficiencies, so the Court dismisses Count 2 without prejudice.

## III. Remaining State-Law Claims

With the dismissal of the CFAA and DTSA claims, Plaintiffs are left with a smattering of state-law claims. As such, supplemental jurisdiction is the only basis for this Court to continue exercising jurisdiction over this case. *See* Doc. 1 ¶¶ 11–14. District courts generally have discretion whether to remand a removed case after the dismissal of federal claims. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (collecting cases and identifying relevant factors, including "judicial economy, convenience, fairness and comity"); *see also Porter v. Williams*, 436 F.3d 917, 920 (8th Cir. 2006) (recognizing authority to remand state-law claims sua sponte). But the Eighth Circuit has instructed that, "where resolution of the remaining claims depends solely on a determination of state law, the district court ***should*** decline to exercise jurisdiction." *Hinshaw v. Moore*, 666 F. App'x 565, 569 (8th Cir. 2016) (quotation and alterations omitted) (emphasis added). That guidance applies here, and in any event, none of the discretionary factors favor retaining jurisdiction of the state-law claims. Therefore, the Court declines supplemental jurisdiction and remands the case to state court.[3]

## CONCLUSION

Accordingly, the Court **GRANTS** Defendants' [13] [26] Motion to Dismiss and **DISMISSES** Counts 1 and 2. Further, the Court declines to exercise supplemental jurisdiction

[3] Still pending are Hatraf's motions for partial default judgment and partial summary judgment. Docs. 22–23. The Court notes that, at least under the Federal Rules of Civil Procedure, Hatraf is wrong to believe that Wright is "legally in default" due to her untimely pleading, Doc. 20 ¶ 5, as the Clerk of Court must determine and "enter the party's default," *see* FED. R. CIV. P. 55(a); *see also Burgess v. Rushi & Khushi LLC*, No. 4:22-CV-1029-MTS, 2023 WL 2808732, at *1 (E.D. Mo. Apr. 6, 2021) ("Such an entry of default is a prerequisite to obtaining a default judgment.") (citing *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). However, because these motions concern only a state-law claim, the Court will leave them to be decided by the state court in the first instance.

over the remaining state-law claims and thus **REMANDS** this case to state court. A separate order of remand will follow.

So ordered this 25th day of August 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE